*State of Maryland v. Jimmie Rogers*, No. 1993, September Term, 2017. Opinion by Nazarian, J.

**MARYLAND SEX OFFENDER REGISTRY–REGISTRATION REQUIREMENTS**

When the underlying conviction does not, alone, mandate registration with the Maryland Sex Offender Registry, the State must prove any remaining statutory elements by the preponderance of the evidence.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1993

September Term, 2017

_____

STATE OF MARYLAND

v.

JIMMIE ROGERS

_____

Kehoe,
Nazarian,
Salmon, James P.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: March 28, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On October 20, 2015, Jimmie Rogers pleaded guilty in the Circuit Court for Anne Arundel County to a single count of human trafficking under Maryland Code § 11-303(a) of the Criminal Law Article ("CR"). Under Maryland Code §§ 11-701(p)(2) and 11-704 of the Criminal Procedure Article ("CP"), Mr. Rogers qualified as a tier II sex offender and was required to register upon release from prison because he was convicted of violating CR § 11-303 and his victim was a minor. Mr. Rogers registered with the Maryland Sex Offender Registry ("MSOR") as instructed on October 4, 2016.

On January 31, 2017, Mr. Rogers filed a complaint in the circuit court seeking a declaratory judgment that he was not required to register as a sex offender because, he argued, the State had failed to establish that his victim was, in fact, a minor. The State and Mr. Rogers both filed motions for summary judgment—the State contended that there was no factual dispute that the victim was a minor, while Mr. Rogers argued that there was no factual dispute that she wasn't. The circuit court granted Mr. Rogers's motion and entered a declaratory judgment stating that Mr. Rogers's conviction did not require him to register as a sex offender. The State appeals that decision and we reverse and remand for further proceedings consistent with this opinion.

## I.    BACKGROUND

On May 1, 2015, Mr. Rogers was charged by indictment in the Circuit Court for Anne Arundel County with five counts of human trafficking a minor victim and two counts of prostitution. At the start of Mr. Rogers's plea hearing five months later, Count Five of the indictment was amended from alleging that he had trafficked a minor victim, citing CR § 11-303(b), to human trafficking generally, citing CR § 11-303(a). Mr. Rogers pleaded

guilty to the amended Count Five and the State entered a *nolle prosequi* on the remaining charges.

At Mr. Rogers's plea hearing, the State laid out the facts it planned to prove at trial. On April 3, 2015, Maryland State Trooper Heid was searching for a missing young woman, M.H.,[1] who was believed to be the victim of human trafficking. In the course of his investigation, Trooper Heid came across a post on Backpage, a website known to him as an advertising hub for sex workers and human trafficking victims.[2] Based on his knowledge and experience in human trafficking investigations, he suspected that the person featured in the post was a human trafficking victim and might be M.H.

Trooper Heid called the number provided on the Backpage post to set up a meeting with the subject for 9:00 that morning. He suspected that the person he spoke to on the phone was a man attempting to disguise his voice as a woman's. Based on the pictures on Backpage, Trooper Heid believed the victim was at a Red Roof Inn in Linthicum, a hotel he knew was a popular prostitution venue. Trooper Heid and several colleagues surveilled the Red Roof Inn's parking lot and saw Mr. Rogers emerge from a vehicle, enter a motel

---

[1] The record extract filed with the briefs in this Court contained the unedited transcript of Mr. Rogers's plea hearing, which included the victim's full name, contrary to the policy of our appellate courts not to identify minor victims of crimes. *See Muthukumarana v. Montgomery Cty.,* 370 Md. 447, 458 n. 2 (2002); *Thomas v. State*, 429 Md. 246, 252 n. 4 (2012); *In re James R.*, 220 Md. App. 132, 134 n.1 (2014). The State agreed at oral argument to correct the problem, and we entered an order on January 28 directing the State to file a revised extract.

[2] Backpage was seized by the FBI in April 2018 and is now defunct. Charlie Savage & Timothy Williams, *U.S. Seizes Backpage.com, a Site Accused of Enabling Prostitution*, N.Y.Times, April 7, 2018, at A14.

room, return minutes later, and drive off. Shortly thereafter, Trooper Heid received a phone call from the number he'd found on Backpage. The caller, who had a different voice than the individual to whom he had spoken earlier, instructed him to come to room 333.

When the police knocked on the door, a young woman, later revealed to be M.H., answered. The officers identified themselves and M.H. explained that her "boss," later identified as Mr. Rogers, had rented the hotel room for her and would be back to check on her soon. She stated that Mr. Rogers had posted her ad on Backpage and that she had, over several days, had sexual intercourse with men for money at Mr. Rogers's direction. M.H. explained that Mr. Rogers set up "dates" for her through Backpage and kept half of the proceeds in exchange for security. It was later revealed that Mr. Rogers had, in fact, been holding all of the proceeds from M.H.'s sex work.

Mr. Rogers was sentenced to ten years' imprisonment and two years' probation. All but 548 days of Mr. Rogers's imprisonment were suspended and he got credit for 202 days already served. Upon release, he registered as a tier II sex offender, as mandated by CP § 11-704, when a person is convicted under CR § 11-303, and their victim is a minor. *See* CP § 11-701(p)(2).

On January 31, 2017, Mr. Rogers filed a complaint for declaratory judgment in the circuit court seeking a declaration that he was not required to register as a sex offender and ordering the State to remove his name from the MSOR. In his motion for summary judgment, he argued that because he had not been convicted under CR §11-303(b), and because the State had failed to produce any evidence that M.H. was a minor, he did not

qualify as a tier II sex offender under CP § 11-701(p)(2). Mr. Rogers provided no evidence to support his motion.

The State filed its own motion for summary judgment and countered that because Mr. Rogers indisputably had been convicted under CR § 11-303 and had never contested M.H.'s minority, the plain language of CP § 11-704 required him to register. The State attached to its motion the affidavit of Allison Gilford, the supervisor and custodian of records for the MSOR, and several documents that purported to demonstrate M.H.'s minority status: (1) Mr. Rogers's Criminal Hearing Sheet indicating he pleaded guilty to Count Five after it was amended to cite CR § 11-303(b) rather than § 11-303(a), (2) the Statement of Charges prepared by Trooper Heid, which indicated repeatedly that M.H. was a minor, and (3) the indictment charging him with five counts of trafficking a minor victim.

After a hearing, the circuit court granted Mr. Rogers's motion for summary judgment and issued a declaration stating that "Jimmie Rogers is not required to register as a tier II sex offender *on the basis of his conviction in State of Maryland vs. Jimmie Junior Rogers, 02-K-15-1039*" and that "Defendants State of Maryland and Maryland Department of Public Safety and Correctional Services . . . shall remove Mr. Rogers' name from any and all sex offender registries on which it appears *as a result of his conviction in State of Maryland vs. Jimmie Junior Rogers, 02-K-15-1039.*" (emphasis in original). The State appeals.

## II.    DISCUSSION

Summary judgment provides trial courts the opportunity to "determine whether there are facts in dispute that must be resolved through a more formal resolution process,

4

such as a trial on the merits." *Hines v. French*, 157 Md. App. 536, 549 (2004). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and [] the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). We review a trial court's grant of summary judgment *de novo*, construing all "reasonable inferences that may be drawn from the facts" in the light most favorable to the non-moving party. *Myers v. Kayhoe*, 391 Md. 188, 203 (2006).

"[I]t is wholly appropriate for a trial court to grant a declaratory judgment at the summary judgment stage." *Piney Orchard Cmty. Ass'n, Inc. v. Piney Pad A, LLC*, 221 Md. App. 196, 206 (2015). We review that decision to determine "whether [it] was correct as a matter of law." *Olde Severna Park Improvement Ass'n, Inc. v. Gunby*, 402 Md. 317, 329 (2007) (*quoting South Easton Neighborhood Ass'n v. Town of Easton*, 387 Md. 468, 487 (2005)).

### A. The Victim's Age Was Not An Element Of Mr. Rogers's Crime And Did Not Need To Be Proven Beyond A Reasonable Doubt.

The State argues that because Mr. Rogers was convicted of human trafficking under CR § 11-303(a) and M.H. was a minor at the time of the offense, he must register with the MSOR under CP § 11-704. Mr. Rogers does not dispute that he was convicted under CR § 11-303(a), but argues that the State is required to prove beyond a reasonable doubt that his victim was a minor to trigger the registration requirement. Mr. Rogers cites no law that supports this argument, and the plain language of the MSOR registration statutes and the caselaw surrounding the MSOR debunk his position.

5

CR § 11-303(a) forbids the knowing "tak[ing] or caus[ing] another to be taken to any place for prostitution; plac[ing], caus[ing] to be placed, or harbor[ing] another in any place for prostitution; persuad[ing], induc[ing], entic[ing], or encourage[ing] another to be taken or placed in any place for prostitution . . . ." In layman's terms, CR § 11-303(a) criminalizes human trafficking, but says nothing specific about the victim. Section 11-303(b), a more serious offense, specifically criminalizes trafficking children and provides that "[a] person may not violate subsection (a) . . . involving a victim who is a minor." Section 11-303(a) is a misdemeanor that carries a maximum penalty of ten years' imprisonment, a $5,000 fine, or both. CR § 11-303(c)(1)(i). CR § 11-303(b), a felony, carries a maximum sentence of 25 years' imprisonment, a fine $15,000 fine, or both. CR § 11-303(c)(2).

Individuals convicted of violating CR § 11-303 are Tier II sex offenders if the offense is perpetrated against a minor, CP § 11-701(p)(2),[3] and they must register with the MSOR. CP § 11-704. The registration statute does not differentiate between convictions under CR § 11-303(b), a crime for which the victim's age is an element, and CR § 11-303(a), for which the victim's age is not—a conviction under either subparagraph triggers tier II status if the victim is a minor.

Mr. Rogers contends that the State must prove beyond a reasonable doubt the prerequisites for tier II status and registration. That standard applies both to the factual

---

[3] The statute provides that "a person who has been convicted of conspiring to commit, attempting to commit, or committing a violation of § 11-303 . . . of the Criminal Law Article, if the intended . . . victim is a minor" is a tier II sex offender. CP § 11-701(p)(2).

elements that make up an offense and to facts that may enhance a sentence for a criminal conviction. *See generally In re Winship*, 397 U.S. 358, 364 (1970) (holding that the Due Process Clause requires each fact that makes up the crime charged to be proven beyond a reasonable doubt to sustain a criminal conviction.); *Apprendi v. New Jersey*, 530 U.S 466, 490 (2002) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). But registration with the MSOR isn't punishment and isn't subject to the evidentiary burden of proof beyond a reasonable doubt. In *Young v. State*, the Court of Appeals held "that the plain language and overall design of the [MSOR] clearly indicate that it was not intended as punishment, but rather was intended as a regulatory requirement aimed at protection of the public." 370 Md. 686, 712 (2002). So even though the requirement to register with MSOR starts with a criminal conviction, it is not a criminal sanction—it's "**a collateral consequence of a conviction**." *In re Nick H.*, 224 Md. App. 668, 707 (2015) (emphasis in original) (*quoting Doe v. Dep't of Public Safety & Corrections Servs.*, 430 Md. 535, 600 (2013) (Barbera, J., dissenting)). And as a collateral consequence, the registration requirements need not be proven beyond a reasonable doubt. *Young*, 370 Md. at 686. Had his case gone to trial, the State would, of course, have been required to prove the elements of his trafficking crime beyond a reasonable doubt. But the victim's age wasn't an element of his underlying crime—it bears on his requirement to register as a sex offender, and isn't subject to the higher standard.

Mr. Rogers argues that the requirement to register with MSOR can stem only from a crime that "'involves conduct that by its nature is a sexual offense' against a minor." *Cain*

*v. State*, 386 Md. 320, 336 (2005) (*quoting* Md. Code (2002), § 11-701(d)(7) of the Criminal Procedure Article).[4] His reliance on *Cain* is misplaced. In *Cain*, the appellant had been charged with several sex offenses as well as second-degree assault. 386 Md. at 323. He pleaded guilty only to second-degree assault, which is not a sexual offense, but the trial court still instructed him to register as a sex offender because the facts of the assault were sexual in nature. *Id.* at 326. In that context, the Court of Appeals held that registration with MSOR is not an appropriate consequence when the crime of conviction "is not one of the enumerated crimes in the statute requiring registration," or is not a crime "that by [its] nature constituted a sexual offense."[5] *Id.* at 335. Mr. Rogers's case is distinguishable—he *has* been convicted of a sex offense specifically enumerated in CP § 11-701(p)(2), and amending the indictment from CR § 11-303(b) to CR § 11-303(a) did not "alter[] the offense's character." Amending the indictment gave Mr. Rogers the opportunity to plead guilty[6] to a misdemeanor rather than a felony, but his offense still fell well within the scope

---

[4] The Court in *Cain* was quoting one of several definitions of 'offender' from the 2002 version of the Criminal Procedure Article. The current definition of 'sex offender' provides instead that: "'Sex offender' means a person who has been convicted of: (1) an offense that would require the person to be classified as a tier I sex offender, tier II sex offender, or tier III sex offender; . . ." or offenses that would fall into those categories committed in other jurisdictions. CP § 11-701(l).

[5] In discussing crimes that, by their nature, are sexual offenses, the Court in *Cain* referenced a catch-all definition of 'offender' from the 2002 version of the Criminal Law Article. *See generally State v. Duran*, 407 Md. 532 (2009). The current version of the Criminal Law Article does not contain this language.

[6] In granting Mr. Rogers's summary judgment motion, the circuit court speculated that his trial counsel had "worked out this deal for this very reason. Didn't want to be on the sex register." Even if that were true, it would have been based on an incorrect understanding of the law, and "the lack of any reference to a requirement for sex offender registration in appellant's plea agreement cannot serve as a basis for implying a term in the plea agreement

of sexual crimes that can require registration as a tier II sex offender. Had the General Assembly intended otherwise, it could easily have drafted the definition of tier II sex offenders to encompass only those convicted of CR § 11-303(b). It didn't, and we decline to read such a distinction into the statute.[7]

### B. Mr. Rogers's Motion For Summary Judgment Should Have Been Denied.

The circuit court did not explain its reasoning when it granted Mr. Rogers's motion for summary judgment and issued a declaration in his favor, but the conversation between the court and trial counsel at the motions hearing reveals the court's concerns. In response to the State's assertion that M.H. was a minor, the court seemed troubled by the quality of the State's proof: "[b]ut [the] victim is not a minor in the sense that it was merely alleged that the victim was a minor, no proof was put onto that fact, there's no finding . . . in that regard." When the State countered that Mr. Rogers had never contested M.H.'s minority, the court responded that "that's not how we do it in America. In America, you have to be proven, not disproven of a fact . . . you can't make an allegation and say, well, it's that way, unless it's proven to be that way."

We agree that the evidentiary record at summary judgment left questions about the victim's age, but disagree with the decision to resolve the uncertainty by granting summary judgment to Mr. Rogers. Mr. Rogers has never meaningfully disputed the victim's minority

---

that appellant not be required to register as a sex offender." *In re Nick H.*, 224 Md. App. at 710.

[7] The MSOR registration statutes use the "if the victim was a minor" language for several other offenses as well. *See, e.g.,* CP §§ 11-701(o)(2), 11-701(p)(3), 11-701(q)(1)(iii).

aside from stating baldly that he disputes it, and that is not enough either to defeat or win summary judgment. *Zurich Am. Ins. Co. v. Uninsured Employers' Fund*, 197 Md. App. 290, 301 (2011) ("[m]ere general allegations of conclusory assertions will not suffice" at summary judgment). At the same time, the State did not provide affirmative evidence of M.H.'s minority either. Although the State was not obligated to prove M.H.'s minority beyond a reasonable doubt, it still had to prove it by a preponderance of the evidence. *See Sweet v. State*, 163 Md. App. 676, 688 (2005) (preponderance of the evidence is the appropriate standard when a defendant challenges registration as a sexually violent predator). The indirect evidence from the State and the absence of any evidence from Mr. Rogers left the circuit court without a record that could support summary judgment for either party, which requires that there be no genuine dispute of material fact, and the court erred when it granted Mr. Rogers's motion.

Situations like Mr. Rogers's seem unlikely to arise with any frequency. More commonly, the record from the criminal trial or plea hearing for the triggering offense will resolve the evidentiary questions that underlie the requirement to register with the MSOR. But the issue of M.H.'s minority was not addressed at Mr. Rogers's plea hearing, which required the parties to develop a record sufficient for the court to resolve the question of Mr. Rogers's obligation to register. We express no views on the ultimate merits of that question—we reverse the summary judgment and resulting declaration and remand the case for further proceedings so that the circuit court can find whether or not M.H. was a minor at the time of the offense and, from there, determine whether Mr. Rogers must register as

a tier II sex offender under CP § 11-704.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.**