948 A.2d 139

**Michael Raheem DURAN**

v.

**STATE of Maryland.**

**Nos. 333, 728, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 9, 2008.

Celia Anderson Davis (Nancy S. Forster, Public Defender on the brief), Baltimore, for Appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellee.

Panel: JAMES R. EYLER, WOODWARD and WRIGHT, JJ.

JAMES R. EYLER, Judge.

Michael Raheem Duran, appellant, was charged, in the Circuit Court for Prince George's County, with indecent exposure in three separate criminal cases: CT06–2373X (one count), CT06–2374X (one count), and CT06–2375X (two counts).[1] Subsequently, appellant pled guilty to count one in each case, and was sentenced to three years imprisonment, with all but 224 days suspended, in each case, the sentences to run concurrently. Appellant was also sentenced to five years supervised probation upon his release, with certain restrictions, including that he register as an "offender" under the provisions of Maryland Code (2002 Repl.Vol., Supp.2007) Criminal Procedure Article, Title 11, Subtitle 7. On appeal, appellant challenges the trial court's requirement that he

---

1. A Nolle Prosequi was entered as to the second count.

register as an offender as a condition of probation.[2] We shall vacate that condition of probation.

## Factual Background

On March 9, 2007, appellant, who was detained prior to the trial date, appeared in court with counsel. The State informed the court that a plea had been negotiated, and the following transpired.

THE STATE: Your Honor, the agreement is that he will plead guilty to Count 1 of each case. There are three cases. That each side is free to allocute for the suspended portion of the sentence, the maximum is three years on each case, and that he will be given credit. All of that will be suspended except for the time that he's served. He's been in jail since September 15th. And that as part of the plea agreement, through Parole and Probation, he will be evaluated as a sexual predator and he will follow all treatment recommendations if there are any from that evaluation. No contact with any of the victims. The State is asking for no unsupervised contact with any children under the age of 18 at this juncture.

THE COURT: Okay.

THE STATE: I believe that's all of it.

APPELLANT'S COUNSEL: Yes.

THE COURT: What is your full, complete and correct name?

APPELLANT: Michael Raheem Duran.

THE COURT: How old are you?

APPELLANT: Thirty-eight.

* * *

THE COURT: What's the last grade in school that you finished?

APPELLANT: High school diploma. High school graduate.

---

**2.** Applications for leave to appeal were granted in this Court in all three cases, and the appeals were consolidated on appellant's motion.

THE COURT: So you read, write and understand the English language?

APPELLANT: Yes.

THE COURT: Are you in good health mentally and physically?

APPELLANT: Yes.

THE COURT: Are you under the influence right now of any alcohol, any drugs or any medication?

APPELLANT: No.

THE COURT: Your attorney indicates that you want to enter pleas of guilty to Count 1 in each of these three indictments; is that correct?

APPELLANT: Yes.

THE COURT: Have you discussed the matter with your attorney?

APPELLANT: Yes.

* * *

THE COURT: Do you understand the nature of the offenses to which you're pleading guilty?

APPELLANT: Yes.

THE COURT: Indecent exposure means exactly that. That you exposed your penis in this case—in each case to three different persons.

Do you understand that?

APPELLANT: Yes.

THE COURT: Do you understand that once I accept your plea of guilty, the only thing left to be done is to sentence you and *I've agreed to sentence you according to the agreement your attorney reached with the State's Attorney and sentence you to no more than a guideline sentence as to the executed part of the sentence?* Both sides are free to allocute as to the amount of the suspended sentence and the period of probation.

*We're going to order a Presentence Investigation which will include an evaluation as to whether or not you are a sexual predator by Parole and Probation. The conditions of your*

*probation will be that you're required to follow their recommendations as to treatment. That you are to have no contact with any of the individuals named in these indictments, and that you're to have no unsupervised contact with any child under the age of 18.*

*Is that your understanding of the plea agreement?*

APPELLANT: Yes.

* * *

THE COURT: Did you understand all of the rights I told you about?

APPELLANT: Yes.

THE COURT: Is it your intention to give up those rights and enter a plea of guilty?

APPELLANT: Yes.

THE COURT: Have a seat. Listen to the State's Attorney tell me what happened in this case.

(Emphasis added).

Subsequently, the State read into the record the agreed upon statement of facts, as follows.

Had this matter gone to trial witnesses would have testified to the following: That on September 1st of the year 2006 at approximately 9:05 in the morning somewhere at the intersection of Plata Street and Megan Drive in Clinton, Prince George's County, Maryland, this Defendant ... approached Jasmin H[.] who was on her way to school.

He was driving a greenish-colored 1995 Toyota Corolla, and he asked Jasmin H[.] if she knew the location of Surrattsville High School. Jasmin H[.] was on her way to middle school. She was age 12, 13 approximately. When this Defendant called Jasmin H[.] over, she observed the Defendant was not wearing any pants, that he was fondling his penis. Jasmin H[.] then walked away and notified the police of the incident.

During the course of the investigation, similar instances in the area were noted. The victim in this case provided a description of the vehicle and the Maryland registration

plate number CBM–821. A computer check of that license plate number revealed that it did belong to this ... Defendant's mother. This Defendant was eventually located and was advised of his rights per Miranda. He waived his rights, and he made a confession involving this incident with Jasmin H[.] who was 13 years of age.

Your Honor, this victim was shown a six-person photo identification and identified this Defendant in the photo spread as the one who had called her over and exposed his penis to her. All of those events occurred in Prince George's County.

Witnesses would have testified that on September 4th of the year 2006 that victim, Ciara W[.], was also walking to middle school when this Defendant approached her, also in Prince George's County. He approached her at about ten minutes to nine in the morning. And he pulled his vehicle alongside of where this victim was walking and asked if she knew where Surrattsville High School was.

The victim said that she looked over and observed this Defendant. He didn't have any pants on, and he was exposing himself to her. This victim fled, and this Defendant also fled in the listed vehicle. She indicated that she had seen this Defendant prior to this exposing himself to kids as they were walking to school. The police responded and checked the area with negative results at that time.

This victim was shown a six-person photo spread on September 21st of the year 2006 and identified this Defendant as the person who had exposed himself to her while she was walking to middle school on September 4th of the year 2006. In CT 06–2375X, September 14th of the year 2006, the 6000 block of Hil Mar Drive in Forestville, Prince George's County, Maryland, this Defendant, who again would be identified as Michael Raheem Duran, approached Shaunice R[.]. She was on her way to school, to middle school. He exposed himself by touching his penis. His pants were down to his ankles as he was sitting in his vehicle.

Again, all of the victims described a similar vehicle, Toyota Corolla. This Defendant again used the same way to get

the children to the car and that was he was asking for directions to a certain school.

On September 15th, the day after this, the Defendant was arrested. He waived his rights per Miranda. He gave a ten-page written statement, and in that statement he did admit to exposing himself to these children. He also admitted that he was a security guard at the Smithsonian Institute or he had just resigned that job days before and that he was in the process of applying for and becoming a Montgomery County police officer. All events occurred in Prince George's County. That would be the proffer.

The court accepted appellant's plea as freely, voluntarily, and intelligently made, found that there was a factual basis for the plea, and entered the guilty pleas as to Count 1 in each case. The court also ordered a Presentence Investigation, to be conducted prior to sentencing. The Presentence Investigation report submitted to the court recommended that appellant "be placed on a lengthy period of supervised probation with the following special conditions:

1) No unsupervised contact with any female under the age of eighteen.

2) Sex Offender treatment as directed by the assigned probation agent.

3) Maryland Sex Offender Registry.

4) Mandatory Psychiatric Evaluation and Treatment as directed by the assigned probation agent.

5) Pay Parole and Probation Monthly Supervision Fees."

At sentencing, on April 27, 2007, the following transpired, relevant to this appeal.

THE COURT: All right. Was there a plea agreement in this case?

THE STATE: Your Honor, the plea agreement was actually just a free to allocute, and I think the only agreement was some of the terms of probation, but it was a free to allocute.

APPELLANT'S COUNSEL: I believe it was free to allocute within Guidelines.

THE STATE: Right. Within Guidelines.

\* \* \*

THE COURT: So, what is the State recommending?

THE STATE:.... We would like, as part of his sentence, five years of supervised probation. They are also asking for a lengthy period of supervised probation. No unsupervised contact with any female under the age of 18. The [S]tate is asking for—and this was already agreed upon—evaluation and treatment as a sexual predator. That was part of the conditions agreed upon.

*The State is also asking that this Defendant register as a sex offender. That is a strong recommendation from this Presentence Investigation, and it's not very often seen in cases where it is not a mandatory registration.*

Also, the Presentence Investigation, and the State is joining in the request, for mandatory psychiatric evaluation and treatment as directed by the probation agent. Supervision fees, I will leave that up to the [c]ourt. That is what the PSI, the Presentence Investigation, is requesting.

Your Honor, the reason why the State is asking the [c]ourt to follow the recommendation of the Presentence Investigation in this matter in terms very specifically of the sexual registration, the [c]ourt will recall that this was not just one isolated case, but it was three cases that had very disturbing similarities. And I will say, just for purposes of sentencing, and it was given in the discovery, there were other children involved, but that their parents didn't come forward. So, they were not charged as part of this.

But, Your Honor, these actions are disturbing in the type that, in this particular field, indicate issues. And the State feels that this Defendant should be watched, and there should be some accountability for safety of children in the community. Thank you.

(Emphasis added).

Appellant's counsel objected to the requirement that appellant register as an offender, and the following transpired.

APPELLANT'S COUNSEL: I believe as far as recommendations on Page 3, 1, 2, 4, and 5, we don't have any issues with, and were part of the agreement. As to the sex offender registry, we do object. And I don't believe that there is any authority under the sex offender registry statute to order [appellant] to register.

The conditions in that, and I believe it's Criminal Procedure Article 11–701, I think, 704, and they list the definitions of people who have to register. And the definitions are based upon specific crimes committed, and indecent exposure is not one of the enumerated offenses. However, there is a catchall that was discussed in *Cain v. State*, 386 Maryland 320[, 872 A.2d 681 (2005) ]. And in that case, a person was charged with various sex offenses and second degree assault. And the Court of Appeals held that in the catchall exception, which I believe is 11–701(d)(7), and that's, had been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years, and they held that crime, that by its nature, refers only to the elements of the offense. And indecent exposure, I don't believe—

THE COURT: What do you mean, refers only to the elements?

APPELLANT'S COUNSEL: Basically, as they held, that second degree assault is just an offensive touching and you can offensively touch anyone—

THE COURT: But you can't look behind the crime? Is that what—

APPELLANT'S COUNSEL: Yes. Yes. You can't look to the Defendant's actions, you look to the crime itself. I guess, the crime as charged. And, so, they also approve— they also cite with approval a case from Hawaii, and I don't—I didn't look up the Hawaii indecent exposure statute. But in the Hawaii case they said indecent exposure is a crime that does not require registration. And that case is—

THE COURT: Well, I don't see how indecent exposure can't be a crime of a sexual nature—

APPELLANT'S COUNSEL: But it's a crime—

THE COURT:—because it involves exposing his penis.

APPELLANT'S COUNSEL: That may be true. But to be—it also has to be a crime that, by its nature, involves someone under the age of 18. And indecent exposure does not involve, by its nature, exposing yourself to someone under the age of 18.

THE STATE: I disagree with the second part, that it has to—the crime involves a crime of a sexual nature, and exposing yourself is a type of paraphilia, which is a sexual—

THE COURT: I mean, I think that case stands for the proposition that if somebody negotiates a plea, or if a jury convicts someone of a second degree assault, which, by its nature, is not sexual, that's something different. But indecent exposure, I have no problem finding that is an offense that is sexual in nature. And while it does not require necessarily that the audience be under 18 years of age, in this case, that was, in fact, the case, that we're dealing with children.

So, by its nature in this case, I think it fits. And I don't think there is—well, I don't think there's any distinction made statutorily between an adult of a child, which would mean that you could expose yourself to millions of school children and not have to register, which makes absolutely no sense. But nice argument, counsel. Anything else you want to say?

* * *

APPELLANT'S COUNSEL:.... I guess the only other argument I would make is that I believe that all the terms of the agreement were put on the record, and sex offender registration was not one of the things that [appellant] agreed to.

* * *

Subsequently, appellant was sentenced, as recited above. With regard to the terms of probation, the court ordered the following.

You will be placed on five years active supervised probation with the following special conditions. First, that you have absolutely no unsupervised contact with any female under the age of 18. Two, that he receive sex offender treatment as directed by Parole and Probation, and follow all their directions in that regard. That he have a mandatory psychiatric evaluation and treatment as directed; *and, lastly, that he does, in fact, register at the Maryland Sex Offender Registry. I think, as I indicated earlier, it is appropriate given the nature of the offense and the intended audience.*

(Emphasis added).

## Discussion

Appellant contends that the trial court erred by requiring him to register as an offender because (1) that requirement "represented an additional requirement falling outside of the boundaries of the plea agreement reached by the parties," and (2) that in any event, "the crime of indecent exposure is not one of the enumerated crimes to which the registration requirements found in [Maryland Code (2001 Repl.Vol., Supp. 2007), § 11–701(d) of the Criminal Procedure Article ('C.P.') ], are applicable." Thus, appellant requests that the requirement that he register as an offender as a condition of probation "be stricken" from his sentences.

As to appellant's first argument, the State responds that "by agreeing to be evaluated by the Department of Parole and Probation to determine his status as a sexual predator, [appellant] implicitly agreed to the registration requirement if recommended to do so as a result of the evaluation." In the alternative, the State avers that "because the order to register is not punitive," pursuant to *Young v. State*, 370 Md. 686, 806 A.2d 233 (2002), the "court's order in this instance was collateral to [appellant's] plea agreement and does not violate the terms of his agreement." With regard to appellant's second argument, the State suggests that "it is clear that the ...

crime of indecent exposure includes conduct that is, by its nature, sexual conduct," and in this case appellant "committed that conduct against a minor"; thus, pursuant to C.P. § 11–701(d)(7) and § 11–704, appellant "was subject to the registration requirement." The State also suggests that, "even if [appellant] is correct and the registration condition is illegal because indecent exposure is not a qualifying offense, [appellant] is still not entitled to a simple release from the obligation of registration" because the plea agreement "clearly contemplated" that appellant be "evaluated and treated, if necessary, as a sexual offender so as to reduce the threat to the community of the consequences of his release from incarceration," and "[s]imply striking the requirement that [appellant] register would frustrate the 'parties' expectations' with regard to the agreement." Thus, the State opines that the " 'fairest remedy' in this case would be to rescind the agreement and place 'the parties in their original positions, unprejudiced by the mistake of law' attendant to requiring [appellant] to register when he had not been convicted of a qualifying offense."

We are unpersuaded by the State's arguments, and shall explain, reversing the order in which the issues were presented by appellant.

### A. Indecent Exposure and Registration Requirements for Certain Offenders

In Maryland, the crime of indecent exposure is a common law offense. *See Wisneski v. State,* 398 Md. 578, 921 A.2d 273 (2007). At common law, the offense necessitated "open and notorious lewdness," and was a misdemeanor "offense against morality." *Id.* at 590, 921 A.2d 273. There are three elements of the crime of indecent exposure: (1) a public exposure; (2) made wilfully and intentionally, as opposed to inadvertently or accidentally; (3) which was observed, or was likely to have been observed, by one or more persons, as opposed to performed in secret, or hidden from the view of others. *Id.* at 593, 921 A.2d 273. Today, the penalty for the crime of indecent exposure is set forth by statute, specifically

Maryland Code, (2002 Repl.Vol., Supp.2007), § 11–107 of the Criminal Law Article, and provides: "A person convicted of indecent exposure is guilty of a misdemeanor and is subject to imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both."

■ Maryland's registration of offenders statute is set forth in Title 11, subtitle 7, of the Criminal Procedure Article. C.P. § 11–704, entitled **"Registration required,"** provides, in relevant part:

(a) *In general.*—A person *shall register* with the person's supervising authority if the person is:

(1) a child sexual offender;

(2) an offender;

(3) a sexually violent offender;

(4) a sexually violent predator[.]

* * *

(Emphasis added).

As we have no difficulty concluding that (1), (3), and (4), do not require registration for the crime of indecent exposure, we turn to the definition of "offender," pursuant to C.P. § 11–701(d), to determine if it requires registration. That section provides, in pertinent part:

*Offender.*—"Offender" means a person who is ordered by a court to register under this subtitle and who:

(1) has been convicted of violating § 3–503 of the Criminal Law Article; [3]

(2) has been convicted of violating § 3–502 of the Criminal Law Article [4] or the fourth degree sexual offense statute under § 3–308 of the Criminal Law Article, if the victim is under the age of 18 years;

---

3. "Child kidnapping."

4. "Kidnapping."

(3) has been convicted of the common law crime of false imprisonment, if the victim is under the age of 18 years and the person is not the victim's parent;

(4) has been convicted of a crime that involves soliciting a person under the age of 18 years to engage in sexual conduct;

(5) has been convicted of violating the child pornography statute under § 11–207 of the Criminal Law Article;

(6) has been convicted of violating any of the prostitution and related crimes statutes under Title 11, Subtitle 3 of the Criminal Law Article if the intended prostitute or victim is under the age of 18 years;

(7) *has been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years[.]*
\* \* \*

(Emphasis added).

Again, it is evident that the crime of indecent exposure does not fall into categories (1) through (6). It is not clear, however, whether indecent exposure is a crime pursuant to (d)(7), that "by its nature is a sexual offense," and, moreover, that is "against a person under the age of 18 years." We conclude that it is not, and explain.

In *Cain v. State*, 386 Md. 320, 872 A.2d 681 (2005), the Court of Appeals considered the issue of who must register as an offender pursuant to C.P. § 11–701(d)(7). In that case, the appellant was charged with one count of child abuse, two counts of third degree sexual offense, and one count of second degree assault. The victim of the criminal conduct was a minor. Cain pled guilty solely to the second degree assault charge.[5] Part of the plea agreement was that the State would request the court to order Cain to register as an offender, and the defense was free to argue that the registration statute was inapplicable. The court sentenced Cain to five-years impris-

---

**5.** The State entered a nolle prosequi on the remaining counts of child abuse and third degree sexual offense.

onment, with five years of supervised probation to follow, with a condition that Cain register as an offender under the registration statute. *Id.* at 323–24, 872 A.2d 681.

The statutory crime of assault in the second degree consists of the common law offenses of assault, assault and battery, and battery, and has been defined as "either [ ] 'an attempt to commit a battery' " which is "the unlawful application of force to the person of another," or "an intentional placing of another in apprehension of receiving an immediate battery." *Id.* at 338, n. 11, 872 A.2d 681 (citing *Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056 (1991)). Cain argued that his conviction for second degree assault did not fall within the definition of "offender" under C.P. § 11–701(d) because assault was not an enumerated offense requiring registration, and, likewise, the elements of assault did not come within any of the subsections. The State conceded that second degree assault was not an enumerated crime, but maintained that Cain should be required to register as an offender "because the underlying facts establishing the assault were sexual in nature, [against a person under the age of 18 years], mandating registration, rather than the elements of the offense." C.P. § 11–701(d)(7); *Cain,* 386 Md. at 329, 872 A.2d 681.

In *Cain,* when interpreting (d)(7), the stated issue was whether the elements of the crime for which Cain was convicted govern, or whether the underlying conduct governs. *Id.* at 335, 872 A.2d 681. At the beginning of its opinion, the Court expressly stated its holding as, "... a person convicted of second degree assault is not required to register as an offender under the Registration of Offenders statute, unless the elements of the crime contain reference to a sexual offense against a minor." *Id.* at 322, 872 A.2d 681.

In its discussion, the Court engaged in a lengthy review of the history and legislative intent of the registration laws, which we shall recite below, in relevant part.

.... In formulating the language of Section 11–701(d)(7), the General Assembly chose the words to define an "offender" as one "convicted of a *crime* that involves conduct that

by its nature is a sexual offense" against a minor. Use of this language suggests that the elements of the crime for which one stands convicted is that to which we must look to determine whether registration is appropriate. To determine otherwise, would be to read the word "crime" out of the definition and rely solely on the offender's conduct.

This interpretation of the plain meaning of the definition at issue finds support in the statute's legislative history informed by the federal [Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C., § 14071 (2000) ] act's interpretation. The Maryland Offender Registration Act was first introduced as Senate Bill 605 and originally did not contain a specific category of "offenders." *See* 1st Reading, S.B. 605 (Jan. 31,1997). The DPSCS [6] submitted a letter to the Senate stating that Senate Bill 605 "would not bring Maryland into full compliance with the Wetterling Act and subsequent U.S. Department of Justice guidelines ... due, in part, to the bill's deficiency in specifying all of the crimes against minors covered by Wetterling." *See* DPSCS Comments on S.B. 605 (1997) (Feb. 27, 1997).

Included among the offenses in the Wetterling Act that Senate bill 605 did not contain was a *crime consisting of any conduct that by its nature is a sexual offense against a minor.* 42 U.S.C. § 14071(a)(2)(A)(vii) (2004 Supp.), as amended by Pub.L. 104–145, § 2, 110 Stat. 1345 (1996); Pub.L. 104–236, §§ 3–7, 110 Stat. 3096, 3097 (1996) (emphasis added [in original] ). On April 4, 1996, the Department of Justice ("DOJ") promulgated guidelines interpreting the definition of criminal offenses that consist of conduct that by its nature is a sexual offense against a minor:

Clause (vii) covers *offenses* consisting of any conduct that by its nature is a sexual offense against a minor. *This clause is intended to insure uniform coverage of convictions under statutes defining sex offenses in which the status of the victim as a minor is an element of an*

6. Department of Public Safety and Correctional Services.

*offense, such as specially defined child molestation offenses, and other offenses prohibiting sexual activity with underage persons.* States can comply with this clause by including convictions under these statutes uniformly in the registration requirement.

*See* DOJ, Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Final Guidelines"), 61 Fed.Reg. 15110 (1996), amended by 62 Fed.Reg. 572 (Jan. 5, 1999) (emphasis added [in original] ). Therefore, the *elements* of the offense were the gravamen of the interpretive guidelines.

In an effort to bring Maryland's registration act in compliance with the Wetterling Act, the House adopted a companion bill, House Bill 343, to broaden the scope of the registration law by changing the term "child sexual offender" to "offender." *See* Floor Report, H.B. 343 (1997). The bill file for House Bill 343 contains copies of both the Wetterling Act and the DOJ's Final Guidelines, indicating the General Assembly's awareness of both in drafting the amendments to Maryland's registration laws. *See* Bill File, H.B. 343 (1997). The Floor Report for House Bill 343 stated, "[t]his bill is designed to bring the State into compliance with that part of the [Wetterling Act] dealing with [child offenders and] sex offender . . . [and] expand[s] the types of offenders required to register to include offenders convicted of . . . *crime[s] that involve[ ] conduct that by its nature is a sexual offense against an individual under the age of 18 years.*" Floor Report, H.B. 343 (emphasis added [in original] ). On April 5, 1997, House Bill 343 was adopted and set forth the types of crimes that required an offender to register. *See* H.B. 343. Subsequently, on April 7, 1997, Senate Bill 605 was amended to include the category of "offenders" as provided by the final adopted version of House Bill 343. *See* Amendment to S.B. 605 (1997).

\* \* \*

Obviously, the definition of "offender" in the Maryland statute is derived from the corresponding definition in the Wetterling Act. As explained *supra,* the U.S. Attorney

General's Final Guidelines explained that the Wetterling Act's provision relating to crimes involving conduct that is inherently a sexual offense was intended to insure uniform coverage of convictions under statutes defining sex offenses and was based upon the elements of the offense. *See* Final Guidelines, 61 Fed.Reg. at 15112.

*Cain,* 386 Md. at 336–38, 872 A.2d 681.

Thus, the Court concluded that Cain was not required to register as an "offender" under C.P. § 11–701(d)(7), as the elements of second degree assault for which Cain was convicted, as quoted above, did not contain reference to a sexual offense against a minor, and did not "contemplate conduct that by its nature involves a sexual offense." *Id.* at 338, 872 A.2d 681. The Court explained:

> In order to qualify a person as an offender pursuant to Section 11–701(d)(7), there must be something more than an assault. *The statute requires that sexual conduct that involves an underage person also must be presented within the crime charged and which the person stands convicted.* To hold otherwise would expose individuals to possible registration that have been convicted of crimes that do not include elements related to sexual conduct with a minor, and would interpret the statute in a manner inconsistent with the General Assembly's intended coverage of qualified "offenders."

*Id.* (Emphasis added).

Although the Court in *Cain* dealt solely with the issue of whether a conviction for the crime of second degree assault required registration as an "offender," in doing so, it compared the holdings of other state courts, and found them to be consistent with its view that individuals convicted of crimes of which the elements do not inherently and facially prohibit conduct constituting a sexual offense, are not required to register as sex offenders. *Id.* at 339, 872 A.2d 681. Particularly noteworthy here was the Court's citation to a 2003 case decide by the Supreme Court of Hawaii, *State v. Chun,* 102 Hawai'i 383, 76 P.3d 935 (2003). In that case, the defendant

pled no contest to a charge of indecent exposure, which apparently occurred in the presence of a minor, and the trial court ordered him to register as a "sex offender" under Hawaii's registration statute pertaining to criminal offenses comprising sexual conduct toward a minor. *Id.* at 936–37.[7] On appeal, the Supreme Court of Hawaii held that the crime of indecent exposure "does not constitute an offense that entails 'criminal sexual conduct' and, consequently, that persons convicted of indecent exposure are not 'sex offenders'" for purposes of the statute. *Id.* at 942. In reaching its conclusion, the court explained that "an offense comprises 'criminal sexual conduct toward a minor' if, and only if, the *elements of the offense* generically describe 'criminal sexual conduct toward a minor.'" *Id.* (Emphasis added). The court noted that the "elements of indecent exposure . . . do not entail 'conduct that by its nature is a sexual offense against a minor,'" because the U.S. Attorney General's Final Guidelines interpreting the Wetterling Act, upon which the Hawaii statute was taken verbatim, provided that the provision applied to "sex offenses in which the status of the victim as a minor is an element of [the] offense," which indecent exposure did not include. *Id.* The court noted that "[a]ccordingly, if a person's actions entail criminal sexual conduct toward a minor, the prosecution should charge the person with an offense that includes criminal sexual conduct among its elements if it wishes to implicate the provisions of [Hawaii's sex offender registration statute.]." *Id.*

As indicated above, in the present case, the crime of indecent exposure is not one of the enumerated crimes requiring registration. Moreover, here, as in *Cain,* the elements of the crime—in this case a public exposure, made wilfully and intentionally, and which was observed, or was likely to have been observed, by one or more persons—do not contain refer-

---

7. The Court of Appeals noted that "Hawaii's sex offender registration statute mandating registration of an "offender" is the same as Maryland's definition of "offender" under Section 11–701(d) of the Criminal Procedure Article. See HAW.REV.STAT.ANN., § 846E–1 (1997, 2004 Cum.Supp.). *Cain,* 386 Md. at 339, n. 12, 872 A.2d 681.

ence to a sexual offense against a minor, and do not contemplate conduct that by its nature involves a sexual offense. The crime of indecent exposure can be committed by an exhibitionist. It is a general intent crime and includes an innumerable variety of offenses, ranging from "reprehensible to the arguably innocuous," *Ricketts v. State*, 291 Md. 701, 709, 436 A.2d 906 (1981), or from "moral depravity" to "momentary poor judgment." *Id.* at 710, 436 A.2d 906. Its elements do not include sexual contact, a sexual act, sexual arousal, gratification, or any other element normally associated with a sexual offense. Consequently, appellant could not have been required to register as an "offender" under the statute. We now turn our attention to the plea agreement to determine whether the court's imposition of registration as a term of probation was contemplated by the agreement, or whether it was an "additional requirement"; and thus, cannot be enforced for that reason.

### B. *Plea Agreement*

At the outset, we note that whether a trial court has violated the terms of a plea agreement is a question of law which we review *de novo*. *Tweedy v. State*, 380 Md. 475, 482, 845 A.2d 1215 (2004). We construe the terms of a plea agreement according to the reasonable understanding of the defendant when he pled guilty. *Id.* "Because plea bargains are similar to contracts, 'contract principles should generally guide the determination of the proper remedy of a broken plea agreement.'" *Solorzano v. State*, 397 Md. 661, 668, 919 A.2d 652 (2007) (quoting *State v. Parker*, 334 Md. 576, 604, 640 A.2d 1104 (1994)). "Thus, when either the prosecution breaches its promise with respect to a plea agreement, or the court breaches a plea agreement that it agreed to abide by, the defendant is entitled to relief." *Solorzano*, 397 Md. at 667–68, 919 A.2d 652; *see also Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). "[W]here the

plea agreement is breached, and it was not caused by the defendant, the general remedy for the breach is to permit the defendant to choose either specific performance or withdrawal of the plea." *Solorzano,* 397 Md. at 668, 919 A.2d 652 (citing *Tweedy,* 380 Md. at 488, 845 A.2d 1215) (other citations omitted); *see also Santobello,* 404 U.S. at 263, 92 S.Ct. 495 (noting that where a defendant has not received the benefit of a plea bargain, the defendant can either have the bargain specifically enforced, or withdraw his plea of guilty.). "Contract principles alone, however, are not enough to resolve disputes over the proper interpretation of a plea bargain." *Solorzano,* 397 Md. at 668, 919 A.2d 652 (other citations omitted). Indeed, "[d]ue process concerns for fairness and the adequacy of procedural safeguards guide any interpretation of a court approved plea agreement." *Id.* (citing *Santobello,* 404 U.S. at 261–62, 92 S.Ct. 495).

To be valid, a plea of guilty must be made voluntarily and intelligently, *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), with knowledge of the direct consequences of the plea. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). To ensure that a plea is valid, Maryland Rule 4–242(c) requires that, before accepting a guilty plea, the trial court must determine, upon an examination of the defendant on the record in open court, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; [8] and, (2) there is a factual basis for the plea.

8. We have not had occasion to decide whether required registration by certain offenders is a direct or collateral consequence of a plea of guilty, *see Dawson v. State,* 172 Md.App. 633, 917 A.2d 133 (2007) (declining to address the issue of whether registration is a direct or collateral consequence of a conviction because appellate courts do not decide constitutional questions where the case can be decided on non-constitutional grounds), although the Court of Appeals has concluded that the registration requirement does not constitute punishment, but rather, is a remedial requirement for the protection of the public. *See Young v. State,* 370 Md. 686, 806 A.2d 233 (2002). We need not decide whether registration is a direct or a collateral consequence of a guilty plea here either, as the issue is not whether appellant's plea was

 Maryland Rule 4–243 sets forth the procedures to be followed when the State and a defendant have entered into a plea agreement. The Rule provides, in pertinent part, as follows.

(c) **Agreements of sentence, disposition, or other judicial action.**

(1) Presentation to the court. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

(2) Not binding on the court. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) Approval of the plea agreement. If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

Recently, in *Solorzano,* the Court of Appeals stated:

Rule 4–243(c)(1) makes clear that a trial court is under no obligation to accept any particular sentence agreed upon by the State and a defendant. Rule 4–243(c)(3), however, makes equally clear that if the trial judge "approves" a plea agreement, the trial court is required to fulfill the terms of

---

knowing and voluntary because a registration requirement was applicable and was not disclosed to him. In this case, a registration requirement was not part of the plea agreement, *see infra,* and as we have concluded, the crime of indecent exposure is not within the registration statute.

that agreement if the defendant pled guilty in reliance on the court's acceptance. *See also Santobello [v. New York],* 404 U.S. [257] at 262, 92 S.Ct. 495, 30 L.Ed.2d 427 [ (1971) ] [parallel citation omitted].

*Solorzano,* 397 Md. at 669–70, 919 A.2d 652; *see also State v. Poole,* 321 Md. 482, 497, 583 A.2d 265 (1991) (holding that once a court accepts a guilty plea, it is bound by the provisions contained in the plea agreement.). Moreover, "a sentencing court cannot modify a plea agreement unilaterally after a defendant has entered a guilty plea in reliance on the terms of that agreement." *Tweedy,* 380 Md. at 486, 845 A.2d 1215.

In the present case, the court accepted appellant's guilty plea on March 9, 2007, after determining that appellant freely, voluntarily, and intelligently entered into the agreement. The agreement, as recited by the State at the plea hearing, was that:

> [Appellant] . . . will plead guilty to Count 1 of each case. There are three cases. That each side is free to allocute for the suspended portion of the sentence, the maximum is three years on each case, and that he will be given credit. All of that will be suspended except for the time that he's served. He's been in jail since September 15th. *And that as part of the plea agreement, through Parole and Probation, he will be evaluated as a sexual predator and he will follow all treatment recommendations if there are any from that evaluation.* No contact with any of the victims. The State is asking for no unsupervised contact with any children under the age of 18 at this juncture.

(Emphasis added).

The court reiterated:

> . . . I've agreed to sentence you according to the agreement your attorney reached with the State's Attorney and sentence you to no more than a guideline sentence as to the executed part of the sentence[.] Both sides are free to allocute as to the amount of the suspended sentence and the period of probation.

> *We're going to order a Presentence Investigation which will include an evaluation as to whether or not you are a sexual predator by Parole and Probation. The conditions of your probation will be that you're required to follow their recommendations as to treatment.* That you are to have no contact with any of the individuals named in these indictments, and that you're to have no unsupervised contact with any child under the age of 18.

(Emphasis added).

Appellant confirmed that he understood the nature of the offense and understood the terms of the agreement. The court was free to accept or reject the plea or to defer decision as to its approval or rejection until after the pre-sentence proceedings and investigation were conducted as directed by it. The court did not defer its decision until after the presentence investigation, however, and chose instead to accept appellant's plea, at the March 9 plea hearing, on the terms set forth above. Registration as an offender was not one of those terms.

> Nevertheless, at sentencing, the State argued that
>
> ... this Defendant [should be required to] register as a sex offender. That is a strong recommendation from this Presentence Investigation, and *it's not very often seen in cases where it is not a mandatory registration.*
>
> \* \* \*
>
> Your Honor, the reason why the State is asking the [c]ourt to follow the recommendation of the Presentence Investigation in this matter in terms very specifically of the sexual registration, the [c]ourt will recall that this was not just one isolated case, but it was three cases that had very disturbing similarities. And I will say, just for purposes of sentencing, and it was given in the discovery, there were other children involved....
>
> \* \* \*
>
> And the State feels that this Defendant should be watched, and there should be some accountability for safety of children in the community.

■ Pursuant to *our* discussion above, the State's argument at sentencing that appellant register as an offender because the crime of indecent exposure was sexual in nature and was committed against children is without merit, as the offense of indecent exposure is not within the statute. On appeal, however, the State, impliedly conceding that indecent exposure is not a "qualifying offense" requiring registration, argues that, nevertheless, the plea agreement "clearly contemplated" that appellant be "evaluated and treated, if necessary, as a sexual offender so as to reduce the threat to the community of the consequences of his release from incarceration...." Presumably, then, the State includes registration as an offender under the umbrella of "evaluation and treatment." We disagree, and in any event, even if we were to assume that the agreement was ambiguous in that regard, the ambiguity would be construed in favor of appellant. *See Solorzano*, 397 Md. at 673, 919 A.2d 652, and cases cited therein.

Registration as an offender was not one of the terms of the plea agreement. The State argues that, nevertheless, appellant is only entitled to a rescission of the plea agreement, not to a striking of the registration requirement. The State's reliance on *Rojas v. State*, 52 Md.App. 440, 450 A.2d 490 (1982), is misplaced. In that case, as part of a plea agreement, the court imposed what the parties later learned was an illegal condition, *i.e.*, Rojas agreed to relinquish his resident alien status and not oppose deportation. After concluding that the condition was illegal because the federal government has exclusive authority over deportation, this Court concluded that it was unfair to permit Rojas to obtain the benefit of his agreement by leaving his suspended sentence intact but not have to give up his resident alien status. Consequently, we rescinded the plea agreement. *Id.* at 446, 450 A.2d 490.

The facts in the case before us are totally dissimilar. In this case, there was no mutual mistake of law or fact. The agreement did not include a registration requirement in the first instance. Thus, appellant is entitled to specific performance of the plea agreement.

CONDITION OF PROBATION REQUIRING REGISTRATION AS AN OFFENDER UNDER MARYLAND CODE, CRIMINAL PROCEDURE ARTICLE, TITLE 11, SUBTITLE 7 VACATED. JUDGMENT OTHERWISE AFFIRMED. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.